APPEAL OF FOX RIVER IRON CO.

Docket No. 4743.    Promulgated December 15, 1926.

1. INVESTED CAPITAL.—The true cost of petitioner's buildings and foundry equipment is the amount at which such properties must be reflected in invested capital and form a basis for depreciation deductions.

2. DEPRECIATION.—Upon buildings a reasonable allowance for exhaustion, wear and tear *held* to be 3 per cent, and upon equipment, furniture, fixtures, etc., a reasonable allowance *held* to be 7½ per cent.

3. PREWAR INVESTED CAPITAL.—A promissory note written by one of the principal stockholders in favor of the taxpayer corporation and carried in its safe from date of organization in 1906 until February, 1916, *held*, not to have been a paid-in surplus for the purposes of prewar invested capital.

4. REASONABLE COMPENSATION OF OFFICERS.—Fifteen thousand five hundred dollars *held* to have been a reasonable aggregate of compensation for four officers of taxpayer company during the year 1920. Amounts paid or credited in excess of that above mentioned *disallowed* as a deduction.

*R. M. O'Hara, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the Commissioner.

This is an appeal from the determination of deficiencies in income tax for the years 1918 and 1920 in the sums of $6,124.14 and $5,689.18, respectively. The petitioner asserts errors on the part of the Commissioner as follows:

(1) Surplus in both the years 1918 and 1920 has been reduced by the amount of $16,255.72, representing erroneous and arbitrary additions to the Depreciation Reserve Account at December 31, 1916.

(2) There has been applied as a charge against Surplus in computing invested capital for both years the amount of $2,276.83, representing a replacement cost incurred by the taxpayer in 1912, which amount, should the Commissioner's addition to Depreciation Reserve at December 31, 1916, be sustained, would constitute a proper charge to Depreciation Reserve instead of to Surplus.

(3) In the computation of the War Profits Credit in 1918, there has erroneously been considered as a part of pre-war invested capital the amount of $15,000.00, representing the par value of unissued stock.

(4) In the computation of the Depreciation deduction in both 1918 and 1920 Depreciation on foundry equipment has erroneously been deducted at the rate of 5% per annum instead of 7½% per annum.

(5) There has been erroneously disallowed as a deduction in 1920 accrued salaries of officers in the amount of $15,000.00.

(6) The Commissioner has erroneously failed to compute the Excess Profits Tax for 1920 under sections 327 and 328; and in the application of those sections in the determination of the 1918 deficiency, has used a rate higher than one which would be justified on the basis of the proper comparative data.

At the hearing Commissioner's counsel admitted assignments of errors numbered 2 and 3 in so far as the same may be found to be material in determining the appeal.

### FINDINGS OF FACT.

The petitioner is an Illinois corporation organized in 1906 and engaged in the business of operating a foundry in Lockdale.

Throughout the period of the petitioner's existence it has been its practice to enter in its capital account only such cost of building improvements and factory equipment as consisted of materials purchased outside. A great deal of the equipment was made by the petitioner's own employees and no charge to capital account was made on account of such additions to equipment. Year after year such additions, replacements, and renewals of equipment were made without any additional amount being entered to capital account.

In the year 1916 the plant and equipment account appeared upon the books in the amount of $102,190.34. Toward the close of that year the petitioner made an actual inventory of all the buildings and foundry equipment then found to be existing and in use, and from an examination of the books of account ascertained that the cost of all the buildings and equipment then on hand aggregated the amount of $125,038.85, and against this total cost set up a reserve in the amount of $36,064.48, leaving the net asset value in the amount of $88,974.37, and the books of account were on December 31, 1916, adjusted in accordance with the foregoing figures.

The Commissioner, for the years 1918 and 1920, determined a depreciation rate on the foundry equipment at 5 per cent and refused to allow a depreciation rate of 7½ per cent claimed by the petitioner.

The petitioner for the period 1916–1920 paid annual salaries to its officers as follows:

| | |
|---|---|
| 1916 | $1,300 |
| 1917 | 2,800 |
| 1918 | 4,522 |
| 1919 | 1,875 |
| 1920 | 15,500 |

The officers consisted of Joy Love, president, Albert Love, vice president, G. A. Linington, secretary and treasurer. These men, with John Love, and one George, constituted the board of directors. Joy Love, the president and general manager, was a successful foundry man and directed the foundry work of the petitioner. He also managed and drew salaries from two other foundries in which he owned a substantial interest. He spent approximately half of his time with the petitioner. G. A. Linington, the secretary and treasurer, superintended the office work, contracts, legal work, and

the production and sales end of the business. He was also a stockholder and director in another foundry. The amount of work or the individual salaries of the other Love brothers do not appear in the record. The director George took no active part in the business.

On or about April 16, 1920, Joy Love, the president and manager, directed the secretary and treasurer to enter additional salaries of $15,000, of which sum $10,000 was for the president and $5,000 for G. A. Linington, the secretary and treasurer. These amounts were in addition to the regular salaries of $15,500 already authorized. The entries were made on the books of the petitioner as directed. These sums were not drawn from the business until the year 1921. There was no formal meeting of directors or minutes authorizing these additional sums, but it was informally discussed, approved, and acquiesced in by the five directors. The matter of salaries was usually left to the president and general manager, although there was no formal resolution giving this authorization. It was the practice of the directors of the petitioner to increase and diminish the salaries each year according to the prospects of the business. For the year 1919 the petitioner suffered a loss but early in 1920 the amount of business and contracts on hand indicated a prosperous year. This sum of $15,000 was intended to include additional salaries for the fourteen lean years in which the officers had drawn small or no salaries, but there was no allocation to any particular years. It was understood among the officers that they would not actually draw salaries unless the financial condition of the petitioner warranted the withdrawal.

Early in the year 1920 the aggregate of salaries of the four officers of the company was fixed at the sum of $15,500. Later, on April 16, 1920, as a result of consultations among the directors, the president and general manager authorized and caused to be credited as additional compensation for the year 1920 the further amount of $15,000, of which $10,000 was on that date credited to the account of the president and $5,000 to the account of the secretary and treasurer.

The petitioner kept its books of account upon the accrual basis.

OPINION.

Trussell: 1. Section 326 of the Revenue Act of 1918 provides that invested capital shall mean (1) actual cash, (2) actual cash value of tangible property paid in for stock or shares, and (3) paid-in or earned surplus and undivided profits, exclusive of profits earned during the taxable year. The petitioner found at the close of 1916 by actual inventory of its physical properties that it had capital and profits represented by physical properties such as build-

ings and foundry equipment which had cost $125,038.85. It also found that the accrued depreciation upon such properties at that time amounted to $36,064.48.

These properties must be reflected in invested capital at the amount of $88,974.37.

2. The second assignment of error has been admitted by the Commissioner, but having taken the view of the invested capital issue as set forth above, the matter of the reinstating of the replacement account of $2,276.83 will be found to be wholly immaterial.

3. The record does not show why the $15,000 note was deposited with the taxpayer corporation. It appears, however, that this note lay in the files of the petitioner from 1906 to 1916 without ever having been used in any manner and during the latter year was withdrawn from its files and destroyed. We, therefore, agree with the Commissioner's admission of error, that the amount of such note can not be included in the pre-war invested capital.

4. For the purposes of determining net taxable income for the years under consideration, the statute provides for, and there must be allowed, a reasonable deduction for exhaustion, wear and tear of buildings and equipment used in the petitioner's business. The testimony of officers of the taxpayer corporation furnishes a general description of the buildings, and, accepting such descriptions, we are of the opinion that a reasonable allowance for exhaustion, wear and tear may properly be computed at 3 per cent. The testimony concerning the foundry equipment discusses the classes and the uses of such equipment, but does not furnish the values of the several classes, and, taken as a whole, we are of the opinion that the total equipment account may be properly depreciated on the basis of 7½ per cent a year.

5. Early in the year 1920 the managing officers of the taxpayer corporation apparently appreciated that that year was to be one of unusual prosperity in the petitioner's business. And, in view of the fact that salaries previously paid had been comparatively small in amount, they determined upon what appears to be a generous increase in officers' salaries and fixed the total of four salaries at the sum of $15,500. A few weeks later another $15,000 was assigned to this salary account. When inquiring as to the reasonable compensation for services of a corporation's officers we may properly consider the duties performed, the responsibilities assumed, and the volume of business handled, and a comparison of these facts in respect to the corporation under inquiry with like facts respecting other taxpayers similarly circumstanced. In view of this petitioner's business, as disclosed by the record, the volume of business done and the results thereof, as shown by net income, we are of the opinion that

the salaries as first fixed at $15,500 for the four officers were reasonable and fair, and that the further amount proposed to be deducted was properly disallowed.

6. The petitioner produced no evidence tending to prove that any abnormality either as to invested capital or net income, or other reason, for the application of the provisions of sections 327 and 328 of the Revenue Act of 1918 were present during the year 1920, and we are, therefore, of the opinion that the tax liability for the year 1920 should be computed in accordance with the provisions of section 301 of the Revenue Act of 1918.

> *The deficiencies will be redetermined in accordance with the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*